[683 NYS2d 631]

In the Matter of the Estate of Ruth K. Urbach, Deceased. Michael H. Urbach et al., Respondents; Cynthia Urbach, Appellant.

Third Department, January 7, 1999

### APPEARANCES OF COUNSEL

*Robert M. Cohen,* Ballston Lake, for appellant.

*Couch, White, Brenner, Howard & Feigenbaum,* Albany (*Paul A. Feigenbaum* of counsel), for respondents.

### OPINION OF THE COURT

MERCURE, J. P.

Petitioner Michael H. Urbach (hereinafter Urbach) and respondent are the children of Ruth K. Urbach (hereinafter decedent), who died a resident of Albany County on February 12, 1993. In her will, decedent bequeathed her Albany residence to respondent and, in an apparent attempt to equalize the bequests to her children, gave Urbach her 20% interest in a real estate partnership "and so much cash which together equals the value of [the residence]". The remainder of the estate was to be divided equally between Urbach and respondent. By order entered March 3, 1993, decedent's will was admitted to probate and petitioners were appointed coexecutors of decedent's estate.

On March 17, 1995, petitioners filed a petition for the final judicial settlement of their accounts as coexecutors, and respondent thereafter filed objections. As a consequence, Surrogate's Court issued an order dated February 7, 1996 directing that petitioners return to the estate a portion of a $12,000 advance commission they had taken without authorization (*see,* SCPA 2310). Based upon its finding that petitioners had acted in good faith, however, Surrogate's Court concluded that no sanction was warranted and that an advance payment of commission in an amount calculated pursuant to SCPA 2307 ($7,283) should be awarded nunc pro tunc. Urbach was directed to return the remaining $4,717, plus interest. Petitioners subsequently filed additional amended accountings, which were met with respondent's further objections, raising issues as to whether the real estate partnership interest bequeathed to Urbach had been properly valued, whether all of decedent's personal property had been accounted for and whether the co-

executors or respondent should be surcharged for any portion of the counsel fees incurred as a result of the litigation.

A seven-day trial was held in September and October 1996. Finding that petitioners' expert opinion regarding the value of decedent's real estate partnership interest was more credible than that proffered by respondent and that respondent's complaint about missing jewelry was both factually meritless and legally barred by a release she had previously executed, Surrogate's Court granted the petition and dismissed respondent's objections. The court further held that petitioners' counsel fees for the "extensive litigation which took place from September 1995 through October 4, 1996" should not be deducted from the estate but should instead be charged to respondent's share of the residuary estate because that cost was attributable to respondent's "frivolous conduct". The court's decree approving petitioners' final accounting was entered on March 3, 1997.

In May 1997, respondent sought leave, purportedly under CPLR 2221, to renew her objections claiming that new facts, including "newly discovered evidence", had arisen since the determination on the accounting petition. The new "evidence" cited in respondent's motion included a journal belonging to decedent that referred to a tax shelter not mentioned in petitioners' accountings, documents reflecting a loan made by decedent to Urbach, an agreement purportedly memorializing a debt to be paid by Urbach's accounting firm, Urbach, Kahn & Werlin, to decedent upon her death and two "questionable" bank accounts in the name of Urbach, Kahn & Werlin. In addition, respondent argued that Surrogate's Court had committed prejudicial legal error by switching from mechanical transcription of the proceedings to stenographic recording after the first morning of trial. Petitioners opposed the renewal motion and cross-moved for sanctions.

By order entered July 14, 1997, Surrogate's Court denied the motion and granted the cross motion. Noting that CPLR 2221 is inapplicable to final judgments or decrees and that the time to move under CPLR 4404 had expired, the court chose to analyze respondent's request for relief against the standards for a CPLR 5015 (a) (2) motion to vacate on the ground of newly discovered evidence. Thus viewed, respondent's motion was found to be meritless because much of the proffered evidence was "blatantly irrelevant" and, in any event, "ha[d] been in [respondent's] possession all along". Further, respondent's complaint about the manner in which the trial was recorded was not a claim based on newly discovered evidence and was

therefore not a proper subject for a CPLR 5015 (a) (2) motion. Inasmuch as the court found respondent's motion "wholly without merit in law and fact", it directed respondent to pay the sum of $1,500 in sanctions to petitioners' attorneys pursuant to 22 NYCRR 130-1.1.

Subsequent disputes arose regarding settlement of the trial transcript, engendering further orders of Surrogate's Court entered December 23, 1997 ruling, *inter alia*, that the record on appeal should consist of the transcript of all of the days of trial, including the days that had been stenographically recorded, and May 13, 1998, holding that under CPLR 5501 (a) (1) and (3), the nonfinal February 7, 1996 order was not properly before the court. Respondent now appeals from the March 3, 1997 decree and the orders entered July 14, 1997, December 23, 1997 and May 13, 1998.

We perceive no error in Surrogate's Court's rulings regarding substantially every aspect of this tortured litigation and see no need to replace or supplement its detailed written analysis on such matters with our own. We are constrained to conclude, however, that Surrogate's Court abused its discretion in charging respondent's residuary share with litigation expenses (legal fees and disbursements ultimately established at $37,552.90) incurred by petitioners as the result of respondent's frivolous objections to the final accounting. The decree entered March 3, 1997 shall be modified to that extent.

Established New York common law requires that all parties to a controversy, the victors and the vanquished, pay their own counsel fees (*see, e.g., Matter of Loomis*, 273 NY 76; *Matter of Povlsen*, 62 Misc 2d 239). Application of that general rule would require that counsel fees incurred by petitioners in defense of respondent's objections be paid by the estate. Although SCPA 2110 authorizes the court to fix the amount of counsel fees for services rendered to an executor or a testamentary beneficiary (SCPA 2110 [1]) and to "direct payment therefor from the estate generally or from the funds in the hands of the [executor] belonging to [a testamentary beneficiary]" (SCPA 2110 [2]), in *Matter of Dillon* (28 NY2d 597, 599), the Court of Appeals held that SCPA 2110 "does not authorize payment for legal services rendered a party to be charged against the share of other individual parties". In that case, a legatee made an unsuccessful effort to vacate the probate of a later will. Upon application of an attorney and coexecutor and pursuant to the authority of SCPA 202 and 2110, Surrogate's Court granted the petition, fixed the coexecutor's compensation and charged

it to the legatee's share. Striking that provision, the Court of Appeals held that "although [the legatee] lost in this litigation, the legal fees of the executor as her adversary were not chargeable to her personally" (28 NY2d 597, 599; *accord, Matter of Povlsen, supra*, at 243; *Matter of Voice*, NYLJ, Sept. 12, 1968, at 18, col 1; *but see, Matter of Ungrich*, 201 NY 415, 419-420; *Matter of Penney*, 60 Misc 2d 334). Because we perceive no reasonable means of distinguishing *Matter of Dillon (supra)* and feel that it establishes the preferable rule in any event, we conclude that Surrogate's Court's unquestionably broad discretion in fixing and awarding counsel fees pursuant to SCPA 2110 (*see, e.g., Matter of Graham*, 238 AD2d 682, 686-687; *Barnum v Cohen*, 228 AD2d 957, 960) does not authorize it to charge a beneficiary for the counsel fees incurred by an executor (*see, Matter of Dillon, supra*).

As a final matter, we note that respondent's appeal from the order entered December 23, 1997 has been rendered moot by virtue of the consolidation of the within appeals.

SPAIN, CARPINELLO and GRAFFEO, JJ., concur.

Ordered that the decree entered March 3, 1997 is modified, on the law, without costs, by reversing so much thereof as charged legal fees and disbursements of $37,552.90 against respondent's residuary share; said legal fees and disbursements shall be charged against the estate; and, as so modified, affirmed.

Ordered that the orders entered July 14, 1997 and May 13, 1998 are affirmed, without costs.

Ordered that the appeal from the order entered December 23, 1997 is dismissed, as moot, without costs.